## GEORGE H. GLADE, Respondent, v. EASTERN ILLINOIS MINING COMPANY, Appellant.

Kansas City Court of Appeals, January 6, and March 2, 1908.

1. **REAL ESTATE BROKER: Commission: Fraud: Fictitious Vendee.** The evidence relating to a sale of certain mining property is examined and held to show a plain case of double dealing thinly disguised on the part of the vendor and the vendee to deprive the agent of his justly earned reward, substituting a nominal vendee in place of the real one.

2. **PRACTICE, APPELLATE: Findings of the Trial Court: Special Verdict.** The findings of fact of the trial court are treated as a special verdict.

3. **TRIAL PRACTICE: Judge and Jury: Correcting Findings: Motion for New Trial.** An error in the court's verdict may be corrected during the term without granting a new trial since the facts as well as the law of the case are in his breast and the correction of an inadvertent error pending a motion for new trial is a proper exercise of judicial right.

4. **REAL ESTATE BROKER: Commission: Nominal Purchaser.** In an action by a broker to recover his commissions it is immaterial whether the vendor knew that the nominal purchaser and the agent of the real purchaser were acting in conjunction for themselves or for others.

5. ———: ———: **Able Purchaser: Performance.** Where a contract of purchase is really performed by the person introduced by the broker the question of his being able, ready and willing to purchase goes out of the case.

6. ———: ———: **Different Contract.** Where the landowner sells to the purchaser introduced by his broker on different terms than those given to the broker it does not deprive the latter of his right to commission on the amount of the proceeds actually realized.

Appeal from Jasper Circuit Court. — *Hon. Howard Gray,* Judge.

AFFIRMED.

*McAntire & Scott* for appellant.

(1)   Upon the special finding of facts as made by the court, the court should have sustained the defendant's demurrer to the evidence at the close of plaintiff's evidence, and also at the close of all the evidence, for the reason that the court by its special finding of facts, found, and the evidence so showed, that the plaintiff had not found a person before the defendant did who would take the mines and lease on the terms dictated by the defendant, that is, to pay to the defendants the sum of $31,500, or to pay to the plaintiff $35,000.   Blackwell v. Adams, 28 Mo. App. 61; Wyle v. Bank, 61 N. Y. 415; Frazier v. Wycoff, 61 N. Y. 447; LaForce v. Washington University, 106 Mo. App. 517; Gambel v. Grether, 108 Mo. App. 340; Page et al. v. Griffin, 71 Mo. App. 524; Crowle v. Somerville, 70 Mo. App. 376; Campbell v. Vanstone, 73 Mo. App. 84; Cox v. Bowling, 54 Mo. App. 289. (2)   On the finding of facts we claim that under the law the plaintiff's demurrer should have been sustained and the court should have found for the defendant.   LaForce v. Washington University, 106 Mo. App. 523; Sibbard v. Iron Co., 83 N. Y. 378; Stedman v. Richardson, 100 Ky. 79; Fairchild v. Cunningham, 84 Minn. 521.   (3) The plaintiff failed to sell to Allen and by special finding the court says that the defendants refused to give him further time to "line Allen up."   Even if defendant had sold to Allen afterward in good faith without design to avoid payment of commission, plaintiff could not have recovered.   LaForce v. Washington University, 106 Mo. App. 523; Sibbard v. Iron Co., 83 N. Y. 378; Stedman v. Richardson, 100 Ky. 79; Fairchild v. Cunningham, 84 Minn. 521; Page v. Griffin, 71 Mo. App. 524.   (4)   The court erred in correcting his error as a jury committed

in rendering a verdict against the defendant after he had marked "given" the finding of facts numbered 2, and when his attention was called to the inconsistency of the finding and the impossibility of a judgment being maintained with such special finding of facts, upon the motion for new trial, he certainly erred in then marking it "refused" after he had marked it "given." Because as a judge it was his duty to correct his errors or mistake as a jury only by sustaining the motion for new trial. Spalding v. Mabal, 27 Mo. 377; Cochran v. Moss, 10 Mo. 416; Ship v. Snyder, 121 Mo. 161. (5) If the finding of facts did not support the judgment the appellate court should and will reverse for error apparent upon the record. Bates v. Bower, 17 Mo. 556; Sutter v. Streit, 21 Mo. 157; Allison v. Dotten, 24 Mo. 343; Case v. Estenchied, 169 Mo. 220. (6) He fails to show by the evidence that he ever found a purchaser who was ready, able and willing to buy that property for that sum. Hence he failed to perform his contract and can not recover. Blackwell v. Adams, 28 Mo. App. 61; Warren v. Cram, 71 Mo. App. 641. (7) He was not even entitled to recover for reasonable value for his services because he failed to make a sale and defendants sold at the sum it reserved the right to sell for. Wylie v. Bank, 61 N. Y. 415.

*McIndoe & Thurman* for respondent.

(1) The defendant having consummated a sale with the purchaser of the plaintiff, the readiness or willingness of the purchaser to buy is not open to question. Plaintiff is entitled to his commission even though defendant conducted the final transfer personally or through another agent at a lower price. McCormick v. Henderson, 100 Mo. App. 649; Wright v. Brown, 68 Mo. App. 577; Stein v. Belsh, 42 Mo. App. 578; Bell v. Maiser, 50 Mo. 150; Tyler v. Parr, 52 Mo. 249; Gretcher v. McCormick, 79 Mo. App. 325; Timberman v. Craddock, 70 Mo. 638; Wetzell v. Wagoner, 41 Mo. App.

509; Brennon v. Roach, 79 Mo. App. 290; Henderson v. Mace, 64 Mo. App. 393; Milan v. Porter, 31 Mo. App. 563; Boss v. Jacobs, 63 Mo. App. 393; Crone v. Trust Co., 85 Mo. App. 601; Fisher v. Realty Co., 159 Mo. 562; Hogan v. Slade, 98 Mo. App. 44; Cunliff v. Horsman, 71 S. W. 368; Veach v. Noman, 95 Mo. App. 500; McCroy Son v. Pfost, 118 Mo. App. 672.    (2)    The plaintiff was the procuring cause of the negotiations which resulted in the sale.   Where a sale is brought about directly through the exertions of the agent, he is the procuring cause.   Wright v. Brown, 68 Mo. App. 583; Wetzell v. Wagoner, 41 Mo. App. 516; Tyler v. Parr, 52 Mo. 250; Crone v. Trust Co., 85 Mo. App. 601; McCormick v. Henderson, 100 Mo. App. 649.    (3)    It is immaterial whether the plaintiff disclosed the name of his purchaser to the defendant prior to the time the sale was closed.   Millan v. Porter, 31 Mo. App. 563; Tyler v. Parr, 52 Mo. 250; Goffe v. Gibson, 18 Mo. App. 4.    (4) Where the purchaser buys the property either through direct or indirect dealings with the principal, the agent is entitled to his commission.   Wright v. Brown, supra; Stind v. Belsch, supra; Bell v. Kaiser, supra; Tyler v. Parr, supra; McCormick v. Henderson, supra; Gretcher v. McCormick, supra.    (5)    And where the sale is executed the question of the willingness, readiness and the ability of the purchaser to buy is not open to question. Wright v. Brown, 68 Mo. App. 583; Shipley v. Leatsche, 60 Mo. App. 20; Stind v. Belsch, 42 Mo. App. 579; Brennon v. Roach, 47 Mo. App. 290.    (6)    The questions as to whether the plaintiff was the procuring cause of the sale is for the jury.   Crone v. Trust Co., 85 Mo. App. 607.    (7)    It is immaterial whether Allen was buying for himself or another.   Gelatt v. Ridge, 117 Mo. 553. (8)    Notwithstanding the fact that appellant sold at a smaller sum, or changed the terms, the respondent can recover.   Nichols v. Whitacre, 112 Mo. App. 692;

Gretcher v. McCormick, 79 Mo. App. 325; Laron v. Bogarth, 68 Mo. App. 407.

JOHNSON, J.—This suit was brought by plaintiff, a real estate agent, against his principal to recover a commission alleged to have been earned in the sale of a mine in Jasper county. A jury was waived, findings of fact were filed, and judgment entered in favor of plaintiff, from which defendant appealed.

It is alleged in the petition that defendant, an Illinois corporation, was the owner of a mining lease and was engaged in operating a mine on the leased premises; that through its managing agents, Bruce Sims and Charles A. Sims, it employed plaintiff in February, 1906, to "find or procure a purchaser or purchasers who would buy the property aforesaid," at the price of $35,000, and agreed to pay plaintiff a commission of ten per cent for the performance of such service. That plaintiff "procured a purchaser for said mine who was willing, ready and able to buy the same for himself and associates," introduced him to defendant's said managing agents who "knew and were informed that the said purchaser and his associates were procured by the plaintiff and that the said purchaser was willing, ready and able to buy said property for himself and associates on the terms authorized by the defendant, and submitted by the plaintiff to said prospective purchaser;" that defendant sold the mine to the purchaser thus procured by plaintiff for $31,500, and was paid the full amount of said purchase price, but "undertook to transfer said property indirectly to said purchaser through one J. E. Aldrich and to have the purchase price paid indirectly from said customer to the said defendant and that the transfer and the payment of the money was made indirectly as aforesaid." The prayer is for judgment in the sum of $3,150. The answer contains a general denial and a special defense in which it is admitted that

plaintiff was employed by Bruce and Charles Sims to sell the property, but it is averred that at the time of the employment "Bruce Sims stated to him (plaintiff) that the property was for sale for $35,000, with a commission of 10 per cent to the person who first sold it, with the distinct understanding that he (Sims) reserved the right to sell the property himself to anyone that might apply to purchase the same." Further, it is alleged "that only Charles Sims and Bruce Sims were authorized to sell the property and that it never gave to any other agents the power to sell the same." The answer ends with the allegation "that on the 8th day of March, 1906, it (defendant) sold the property under its reservation to J. E. Aldrich for $31,500."

In the reply, plaintiff "denies that J. E. Aldrich ever paid any money of his own for or purchased said property," and alleges that "said Aldrich was used as a go-between by defendant and plaintiff's customer in the transfer of said property to said customer, and after plaintiff's customer had taken charge of and was in possession of said property and that the money was furnished by plaintiff's customer to said Aldrich to pay the defendant therefor. . . . And that said Aldrich paid no money or consideration therefor, and the same was closed in said manner with full knowledge of the defendant and its agents with the intention of depriving plaintiff of his commissions and was closed in an indirect manner for the purpose of evading payment thereof."

Special findings of facts made by the court are as follows: "That in February, 1906, the defendant was the owner of a mining lease . . . in Jasper county, Missouri, and that on said date, by and through its agents, authorized the plaintiff to sell said property at the price of $35.000, and agreed that if plaintiff could sell said property or find a purchaser therefor, to pay to plaintiff a commission of ten per cent on said $35,-

000. . . . That said right to sell was not an exclusive right, but that the defendant expressly reserved the right to sell said property of its own accord and also reserved the right to place said property in the hands of other agents. . . . That after the making of said agreement, plaintiff interested one F. P. Allen in said property and who was in the market to place mining property for other parties with whom he was associated. That the plaintiff and said Allen examined said mine and property and, after such examination, the plaintiff was requested by said Allen to procure from the defendant the terms of payment of said sale, and thereupon, the defendant authorized the sale upon the payment of $2,000 in cash and the balance in a time not exceeding forty days. . . . That said Allen then tried to get the plaintiff to furnish a part of the $2,000 to make the first payment on said property, but that the plaintiff declined to do so, and thereupon, the said Allen left the plaintiff with a view of getting some other person to assist him to furnish said money. . . . That said Allen interested one Jos. E. Aldrich, and got said Aldrich to furnish a part of said money for the purpose of buying said property; and while the defendant claimed that said Aldrich purchased said property from it prior to the time he negotiated with said Allen concerning the same, the court finds that at the trial, the said Allen was neither able to state where or with whom he made the contract for the purchase; that one of the said agents for the defendant, and who was authorized to sell the property for it, and with whom it is claimed the contract was made, for the sale of the property to said Aldrich, testified that the sale was made at the mine on the 8th day of March, 1906, and that at said place the said Aldrich simply said he would take the property and the deal was finally closed with his brother. The said Aldrich testified he was not at the mine at all on the 8th

of March and did not know where it was he made the contract.    The other agent of the defendant, to-wit: Bruce Sims, testified that the contract was with his brother and he had nothing to do with it.    That taking into consideration the conflict and uncertainty of those different stories, and the further fact that said Allen when he was notified by said Aldrich that the price was $40,000, immediately entered into a contract with said Aldrich for the property without returning to see the plaintiff or making inquiry as to why he was compelled to pay the additional $5,000 for the property, together with the further fact that on the evening of the 8th of March, the day said Aldrich claimed he bought the property, or the morning of the 9th, the said Allen paid said Aldrich $1,000, the same being one-half of the $2,000 payment, and the further fact that finally on the 16th day of April, the said Allen paid to the defendant the full purchase price for said property, the court finds the fact to be that said Allen interested the said Aldrich in the purchase of said property and that Aldrich did not purchase the same independent of the said Allen. . . . That neither the defendant nor either of the witnesses, Charles or Bruce Sims, knew of the fact that Aldrich was interested with Allen in the purchase of said property prior to or at the time of the making of the contract with said Aldrich for the sale of said property. . . . That the property was sold by the defendant for $31,500 net and that the plaintiff was the procuring cause of said sale in interesting said Allen, having him examine the property, and that he finally purchased the same and paid therefor."

The court refused to give a declaration of law in the nature of a demurrer to the evidence.    Defendant argues that it should have been given, first, for the reason that the evidence is entirely barren of facts or circumstances on which to predicate the conclusion entertained by the court that Allen and Aldrich had procured the con-

veyance of the property in furtherance of a fraudulent purpose to deprive plaintiff of his commission and, second, because the facts as found by the court do not afford a cause of action against defendant.

The evidence clearly demonstrates that the first of these positions is untenable. We recognize in the facts adduced a plain case of double dealing thinly disguised on the part of vendor and vendee to deprive the agent of the former of the reward justly earned by him under his contract of employment and, in our opinion, the only error committed by the learned trial judge appears in the finding that neither defendant nor its agents knew "that Aldrich was interested with Allen in the purchase of said property prior to or at the time of making of the contract with said Aldrich for the sale of said property."

The real facts of the transaction thus may be stated: Plaintiff interested Allen in the property, introduced him to defendant's managers and conducted negotiations with him. It was known by all that Allen was what is termed a promoter and that it was his purpose to associate himself with persons of means who would furnish the money required to purchase the property. He induced some persons who lived in an eastern state to go into the deal and to provide the necessary funds. He then went to Aldrich with whom he appears to have been intimately acquainted and they concocted a scheme for Aldrich to buy the property direct from defendant for $31,500 and then to sell it to Allen and his associates for $40,000. This subterfuge would enable them not only to save for themselves $3,500, which plaintiff should receive as commission, but also to defraud Allen's associates out of $5,000 on the specious pretext that Aldrich had outstripped them in a race for the property and had raised the price. We think Charles and Bruce Sims were cognizant of the fact that Allen and Aldrich were united in interest and, relying on their reservation of

the right to make a sale themselves, acquiesced in the proposal to make the transfer of the property to Aldrich in order that the vendees might receive the amount which otherwise would go to plaintiff as commission. Their lack of frankness, convenient lapses of memory relative to prominent events in what, to them, was a transaction of first importance, their contradictions of each other and manifest tergiversations, appear to us to be incompatible with singleness of purpose and to proclaim their guilty knowledge of the fraudulent scheme they did all in their power to effectuate. The findings of fact as far as they go are fully justified by the evidence.

What we have just said is in response to the argument that the facts found are unsupported by evidence in essential particulars and is not to be understood as indicating a purpose on our part to set aside or disregard any of the findings. We shall treat them as we would the verdict of a jury and in our consideration of defendant's second proposition, regard as proved, the fact found by the court that defendant had no knowledge that Aldrich was interested with Allen at the time it conveyed the property.

Preliminary to a discussion of the question of whether or not the facts found by the court disclose a cause of action, we are called on to decide a question of practice. It appears that defendant requested the court to make certain special findings, among them the following:

"The court sitting as a jury declares that it finds and believes from the evidence in this case that Joseph E. Aldrich purchased defendant's property described in plaintiff's petition before he had knowledge that F. P. Allen wanted to purchase the same and that the plaintiff did not find or procure Joseph E. Aldrich as a purchaser of said property."

The court marked that request "given," but when,

on the hearing of the motion for a new trial, its attention was directed to the inconsistency between it and the other findings and declarations of law, it erased the word "given" and substituted the word "refused." The judge declared at the time that the marking of the same "given" was a clerical error and that it was the intention of the court to have marked the same "refused."

Defendant objected and still objects to the alteration on the ground that the error, if one were committed, was judicial and not clerical and that, as the functions of the judge in his capacity as a trier of fact ended with the filing of his findings of fact, he had no power to set aside or alter any of them thereafter. The conclusion drawn from this premise is that the alteration must be disregarded and the facts embodied in the request treated as though settled by verdict in favor of defendant. Our attention has not been called to any authority directly in point. Counsel for defendant rely mainly on the case of Shipp v. Snyder, 121 Mo. 155, where in speaking of the functions and duties of a trial judge who performs the duties of a jury, the Supreme Court say: "In such case the court acts in a dual capacity—as a jury, he weighs the evidence and renders a verdict upon the facts; as a judge he declares the law upon the facts as found. A verdict may be either general or special. A general verdict pronounces generally upon the issues in favor of one party or the other. A special verdict finds the facts only, leaving the judgment to the court. [R. S. 1899, section 2160.] The court, in this case, sitting as a jury, was under no obligations to make a special finding of the facts, but, as was his privilege, he did so. The facts as found by him are responsive to the issues upon which a judgment could have been rendered, and his functions as a jury then ceased. [Spalding v. Mayhall, 27 Mo. 377; Cochran v. Moss, 10 Mo. 416.] And it became his duty, as a court, to render judgment on the

finding or, if dissatisfied with it for any valid reason to set it aside."

The closing sentence of the quotation is against the contention of counsel for defendant in the intimation that the trial judge, after special findings are filed, may set them aside for any valid reason. This does not mean that an error discovered in the court's verdict may be corrected only by the granting of a new trial. What reason, except it be of the most technical character could be given for a rule of practice which would compel the judge to subject the parties and witnesses to the expense and annoyance of another trial and to consume the time of the court in rehearing evidence and argument which he has heard judicially and with which, presumably, he is perfectly familiar? Though acting in a dual capacity, the facts as well as the law of the case are lodged in his breast, subject to review and revision until the close of the term during which final action is taken. The correction of an inadvertent error during the pendency of the motion for a new trial was a proper exercise of judicial right.

The findings of fact support the judgment. Plaintiff was not given the exclusive authority to sell the property but was employed to procure a purchaser on the terms proposed. At the time of the sale by defendant his authority as agent had not been revoked and on the hypothesis that Allen and Aldrich were jointly interested in the purchase, it cannot be gainsaid that the exertions of plaintiff were the procuring cause of the sale. [Wright v. Brown, 68 Mo. App. 577; Wetzell v. Wagoner, 41 Mo. App. 516; Tyler v. Parr, 52 Mo. 250; Crone v. Trust Co., 85 Mo. App. 601; McCormack v. Henderson, 100 Mo. App. 649.]

It is immaterial whether defendant knew that Allen and Aldrich were acting in conjunction for themselves or for others. [Gelatt v. Ridge, 117 Mo. 553; Millan v.

Porter, 31 Mo. App. 563; Tyler v. Parr, supra; Goffe v. Gibson, 18 Mo. App. 4.]

There is no merit in the argument that as Allen was not able to purchase the property plaintiff cannot recover, since he failed to procure a customer who was ready, willing and able to buy and pay for the property. The contract of sale was fully executed by the payment in full through Allen of the purchase price. "When the purchaser is accepted and the contract executed, the principal cannot be heard to say when the agent calls on him for compensation that 'you did not produce a purchaser who was financially able to perform the contract and respond in damages in case of nonperformance by him and, therefore, I owe you nothing for your services.' When the purchaser in a case of this kind has performed the contract, the question of his primary responsibility is eliminated from the controversy." [Wright v. Brown, supra.]

As the scope of plaintiff's services was limited by the contract of employment to the procuring of a purchaser, the fact that defendant, on its own motion made a sale for a less consideration than it authorized plaintiff to offer, did not deprive the latter of his right to a commission on the amount of the proceeds actually realized. [Nichols v. Whitacre, 112 Mo. App. 692; Grether v. M'Cormick, 79 Mo. App. 325; Larow v. Bozarth, 68 Mo. App. 407.]

Under the principles stated, it is manifest that the demurrer to the evidence should not have been sustained and that under the special facts found, the court could not do otherwise than enter judgment for plaintiff for ten per cent of the amount of the proceeds of the sale.

Objections are made to the declarations of law given at the instance of plaintiff, but they are fully answered in the views expressed. The case was fairly tried and

the judgment is for the right party.    Accordingly, it is affirmed.    All concur.

